**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

```
DAVID MASON, et al.                 :
                                    :
                                    :
v.                                  :        Civil Action WMN-00-562
                                    :
                                    :
HONEYWELL INTERNATIONAL             :
INC, et al.                         :
```

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

```
LEONARD EMALA, et al.               :
                                    :
                                    :
v.                                  :        Civil Action WMN-00-2749
                                    :
                                    :
HONEYWELL INTERNATIONAL             :
INC, et al.                         :
```

**MEMORANDUM**

Before the Court are: motions for attorneys' fees and costs filed by Plaintiffs in WMN-00-562 (Paper No. 130) and WMN-00-2749 (Paper No. 42); in WMN-00-562, Defendant Raytheon's Motion to Dismiss Count VIII, or in the Alternative, for Summary Judgment (Paper No. 141); and also in that case, Plaintiffs' Motion for Class Action Certification of Count VIII (Paper No. 131). All motions have been exhaustively briefed and are ripe for decision. Upon review of the pleadings and applicable case law, this Court determines that no hearing is necessary (Local Rule 105.6) and that: Plaintiffs' motion for attorneys' fees will be granted; Raytheon's Motion to Dismiss will be granted; and the motion for

class certification will be denied as moot.

## I.  BACKGROUND

This is not the first time this Court has had occasion to
address disputes among these parties. On September 26, 2001,
this Court ruled upon several counts in both cases, and awarded
partial summary judgment to Plaintiffs on some claims, and to
Defendants on others. See, Memorandum and Order dated September
26, 2001, in Civil Action Nos. WMN-00562 and WMN-00-2749. Much
of the factual background recited in that opinion is relevant to
this one, and will be repeated below as necessary.

These actions were brought by former employees and
beneficiaries of Defendant Honeywell International, Inc.
("Honeywell") alleging several violations of the Employee
Retirement Income Security Act of 1974 ("ERISA") and the
Consolidated Omnibus Reconciliation Act of 1986 ("COBRA"). The
facts recited herein are undisputed, unless otherwise indicated.

Plaintiffs' complaints in both cases arise out of a 1998
corporate transaction between AlliedSignal Inc. ("AlliedSignal")
and Raytheon Corporation ("Raytheon"). Prior to the transaction,
Plaintiffs were employees (and their beneficiaries) of
AlliedSignal at its Towson, Maryland facility. On September 9,
1998, Raytheon purchased the assets of AlliedSignal's Towson
facility. On that date, Plaintiffs were terminated from

2

AlliedSignal and began employment with Raytheon.  Subsequently,
in December 1999, AlliedSignal acquired Honeywell Inc. and
changed the name of the combined corporation to Honeywell
International Inc.  This Memorandum will refer to AlliedSignal
and Honeywell International collectively as "Honeywell."

Raytheon purchased the Honeywell facility pursuant to an
Asset Purchase Agreement ("APA") negotiated by the two companies.
The APA required Raytheon to offer employment to Honeywell
employees, and to provide employees who transferred from
Honeywell ("Transferred Employees") with at least one year of
compensation at rates no lower than before the sale.  More
specifically, certain provisions of and amendments to the APA
governed Raytheon's obligations to Transferred Employees in areas
such as group health insurance, pension plans, retirement health
plans, severance pay, and other benefits.

This Memorandum will address the parties' motions seriatim,
adding further factual background where necessary.

## II.  PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS

In its Memorandum and Order dated September 26, 2001, this
Court awarded partial summary judgment to Plaintiffs in WMN-00-
562 and WMN-00-2749, on their claims against Defendant Honeywell
for violations of ERISA's reporting and disclosure requirements,
and awarded Plaintiffs attorneys' fees and costs for work

3

directly related to those claims.[1]  See, Mem. & Ord. of September
26, 2001, at p. 45.  The materials submitted by the parties at
that time, however, did not adequately specify which work was
related to the successful claims and which was not.  Accordingly,
this Court ordered Plaintiffs to file a supplemental brief that
would allow an award of fees and costs on the reporting and
disclosure claims only.  Unfortunately, this request sparked
protracted litigation of fees and costs, and no fewer than ten
pleadings filed by the parties over the following five months.
Despite the contentiousness of the issue, the Court finds that
the parties have submitted sufficient information on which to
base an award.[2]

    This Court's previous memorandum opinion included a
substantial discussion of the propriety of awarding attorneys'
fees and costs in this dispute, pursuant to the factors
enunciated in Quesinberry v. Life Ins. Co. of North America, 987
F.2d 1017, 1029 (4th Cir. 1993) (citing Reinking v. Philadelphia

---

[1] Plaintiffs who have prevailed on some claims are entitled
to interim awards of attorneys' fees without waiting for a final
judgment on all claims in the lawsuit.  See, Missouri v. Jenkins,
491 U.S. 274, 284 n. 6 (1989).

[2] Accordingly, the Court determines that Plaintiffs' Motion
for Defendant's Billing Records (Paper No. 134 in WMN-00-562;
Paper No. 45 in WMN-00-2749) will be denied.  It does not appear
that the production of such documents would aid the Court in its
award of fees to Plaintiffs.

4

American Life Ins. Co., 910 F.2d 1210, 1217-18 (4th Cir. 1990)).
See, Mem. & Ord. of September 26, 2001 at 42-46. Without
repeating that discussion here, the Court reiterates that a
majority of Plaintiffs' legitimate requests for plan documents
were met with strong and stubborn resistance by Defendant, both
before and during litigation, over a period of years.[3] This
course of conduct, with other factors, led this Court to impose
statutory penalties against Defendant pursuant to 29 U.S.C. §
1132(c)(1). Id. at 39-42.

Plaintiffs' initially requested compensation for
approximately 450 hours of work on the successful claims.
Defendant argues, inter alia, that Plaintiffs overstated the
number of hours by including time spent on other claims or
aspects of the lawsuit.[4] Although Defendant points to some
specific time entries that are allegedly unreasonable, it also
makes the unsupported assertion that Plaintiffs should recover no
more than $25,000 in fees. In response, Plaintiffs revisited
many of their billing record entries and made reductions to the

---

[3] For example, Defendant conducted extensive discovery
related to the reporting and disclosure claims, and raised
numerous defenses to the claims, including the non-meritorious
defenses that the requests were made by counsel and that
inaccurate addresses delayed their delivery. See, Mem. & Ord.
dated September 26, 2001, at pp. 26-27.

[4] Defendant has not contested the hourly rates proposed by
Plaintiffs.

requested compensation, in many cases as much as 80 percent.[5]
Plaintiffs have also conceded that Defendants identified 4.6
hours which were inadvertently included in their motion and for
which Plaintiffs now seek no compensation.  See, Pls.' Reply at 5
n. 2.

After the reductions made by Plaintiffs in their Reply,
their requested compensation is as follows: $106,126.05 in
attorneys' fees; $2000.45 in costs for depositions, photocopying,
and filing fees; and $9,468.25 for drafting their Reply.  The
Court finds that, in light of the Quisenberry factors discussed
in the earlier memorandum, and based on the billing records
submitted by Plaintiffs, an award of $106,126.05 in fees and
$2,000.45 in costs is reasonable.  The Court also finds, however,
that Plaintiffs should not be compensated for work done on their
Reply, because it corrects errors and misrepresentations that
Plaintiffs should have remedied before submitting their initial
pleading.

_____

[5] Prior to filing their reply brief, Plaintiffs filed a
Motion for Leave to File Reply in each case (Paper No. 135 in
WMN-00-562; Paper No. 46 in WMN-00-2749).  The motions will be
granted.  Soon thereafter, Defendant filed a Surreply in both
cases, and Plaintiffs moved to strike it (Paper No. 144 in WMN-
00-562; Paper No. 53 in WMN-00-2479).  The motions to strike will
be denied.

6

## III.  DEFENDANT RAYTHEON'S MOTION TO DISMISS COUNT VIII of WMN-00-562

In Count VIII of the Third Amended Complaint, Plaintiffs allege that Defendant Raytheon violated Section 510 of ERISA, 29 U.S.C. § 1140, which prohibits employers from discriminating against employees for the purpose of interfering with employees' attainment or exercise of their rights to certain benefits, including retiree health plans.[6]  The Fourth Circuit has observed that the "primary focus of § 510 is to 'prevent[] unscrupulous employers from discharging or harassing their employees in order to keep them from obtaining vested pension rights'." Conkwright v. Westinghouse Elec. Corp., 933 F.2d 231, 237 (4th Cir. 1991), quoting West v. Butler, 621 F.2d 240, 245 (6th Cir. 1980).

The Plaintiffs in Count VIII are Eleanor and Andrew Mason, the wife and son of Plaintiff David Mason, who was a Honeywell employee until September 9, 1998, when Raytheon purchased the Towson facility.  On that date, David Mason accepted employment

---

[6] Section 510 states, in pertinent part:

It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan . . . .

7

with Raytheon, where he worked until the year 2000. At the time of the Raytheon purchase, David Mason was eligible for benefits under the AlliedSignal Retiree Health Plan.

The APA, which set forth the terms of the Raytheon purchase, stated that Raytheon would provide "Transferred Employees" with retiree medical benefits on terms and conditions "not less favorable" than the retiree medical benefits Raytheon provides to its own employees. See, APA § 6.8 (Def.'s Mot. to Dismiss, Exh. 1). On the closing date of the purchase, however, § 6.8 of the APA was amended to add a provision applicable only to those Transferred Employees who, at the time of closing, qualified for AlliedSignal retiree health benefits. The amendment gave those employees the option of terminating with Raytheon before December 31, 1998, in exchange for receiving a retiree health plan from Raytheon with the same terms and conditions as the AlliedSignal plan. The amendment states as follows:

> In addition, with respect to any Transferred Employee who voluntarily terminates employment with [Raytheon] within ninety (90) days after the Closing Date, if such Transferred Employee would have qualified under the [AlliedSignal] Retiree Plans as of the Closing Date for retiree medical and life insurance benefits if such Transferred Employee had not accepted [Raytheon's] offer of employment pursuant to Section 6.1(b), then [Raytheon] shall provide such Transferred Employee retiree medical and life insurance benefits on terms and conditions not less favorable than those provided under the [AlliedSignal] Retiree Plans.

8

APA § 6.8 (Def.'s Mot. to Dismiss, Exh. 1).

In Count VIII, Plaintiffs allege that this provision "forced" David Mason "to surrender coverage" in the AlliedSignal plan "in order to keep working for Raytheon" after December 1998.[7]  Third Amended Complaint at ¶ 94.  In implementing the amendment to § 6.8, therefore, Plaintiffs allege that Raytheon unlawfully discriminated against only those employees who had been eligible for retiree medical benefits, in violation of ERISA § 510.  David Mason chose not to terminate from Raytheon prior to December, 1998, and as a consequence, Raytheon did not provide him with a retiree health plan on the same terms and conditions as the AlliedSignal plan.

What is clear from the Masons' factual allegations, if taken as true, is that the family experienced a loss of coverage when they no longer qualified for the AlliedSignal plan.  What is not at all clear is that Raytheon discriminated against them, or similarly situated plaintiffs, in any way.  Plaintiffs have failed to cite any legal authority for the proposition that

---

[7] Apparently as an effort to support these bold assertions, Plaintiffs frequently attempt to characterize Raytheon's oral and written communications about the retiree benefits option as "threats of termination" or "ultimatums of threatened imminent termination."  See, e.g., Pls.' Opp. at 12.  The Court finds these attempts to be a misleading portrayal of the information disseminated by Raytheon, and sees no evidence of "threats" of any kind.

Raytheon was obligated to provide Transferred Employees with the same retiree health benefits that they enjoyed under their previous employer.[8] That Raytheon gave qualified Transferred Employees the additional option of obtaining benefits at their previous levels, in exchange for quickly terminating with Raytheon, cannot be considered a discriminatory act, despite Plaintiffs' efforts to paint it that way. This Court cannot conclude that amended § 6.8 was anything other than an "early buy-out" option that eligible Transferred Employees were free to take or leave.[9]

In an analogous case, Welsh v. Empire Plastics, Inc., 42 F.Supp.2d 748 (N.D. Ohio 1999), aff'd, 215 F.3d 1328 (6th Cir. 2000), plaintiff employees worked in a plastics plant that was bought by the Empire Plastics corporation. As part of the

_____

[8] To the contrary, Defendant cites West v. Greyhound Corp., 813 F.2d 951, 955 (9th Cir. 1987) for the proposition that, absent contractual obligations, a purchaser of assets is under no obligation to hire its predecessor's employees, and may set the initial terms of employment for those it hires. See also, Welsh v. Empire Plastics, Inc., 42 F.Supp.2d 748, 753 (N.D. Ohio 1999), aff'd, 215 F.3d 1328 (6th Cir. 2000).

[9] In their Opposition brief, Plaintiffs further argue that Raytheon violated § 510 by depriving employees who chose to terminate before December 31, 1998 (in order to maintain their previous level of retiree health benefits) of certain other employee benefits that became available only to those employees who remained with Raytheon past that date. Again, however, Plaintiffs are attempting to characterize a choice between options as a punishment or threat of termination.

10

purchase, employees could only qualify for coverage under the

seller's retiree health plan by terminating with Empire within a

brief "window" of time.  In that case, the plaintiffs had elected

to retire and take the medical coverage.  They then sued Empire,

alleging a violation of ERISA § 510.  The district court granted

summary judgment to Empire, finding that:

> [A]ll Plaintiffs retired from Empire because they
> preferred the security of "locking-in" their retiree
> medical benefits as opposed to the uncertainty [of]
> what the collective bargaining negotiations between
> Empire and the Union would bring. Under no
> circumstances have Plaintiffs suffered an adverse
> employment action which is actionable under §§ 510 of
> ERISA. Accordingly, Plaintiffs have failed to show that
> Empire's creation of a window of opportunity in which
> certain eligible employees could retire and preserve
> their retiree medical benefits constitutes engaging in
> prohibited conduct under ERISA.

Welsh at 754.

The Court finds that, despite Plaintiffs' efforts to

distinguish Welsh from their situation, the district court's

reasoning in that case applies here.  Plaintiffs have alleged

that the choice offered by Raytheon was unfair, but like the

Welsh plaintiffs, they have not stated a claim for any actionable

discrimination under § 510.  Under Fed. R. Civ. P. 12(b)(6), a

motion to dismiss a complaint should be granted where it "appears

beyond doubt that the plaintiff can prove no set of facts in

support of his claim which would entitle him to relief."  Conley

11

v. Gibson, 355 U.S. 41, 45-46 (1957). Although the plaintiff's
factual allegations must be accepted as true, the Court "is not
bound to accept as true a legal conclusion couched as a factual
allegation." HQM, Ltd. v. Hatfield, 71 F.Supp.2d 500, 501 (D.
Md. 1999). Accepting all of Plaintiffs' factual allegations as
true, Plaintiffs still fail to present an actionable claim under
§ 510, because they are unable to charge Raytheon with any
interference in the Masons' exercise or attainment of "any right
to which [they are] entitled."

Having found that Plaintiffs have failed to state a claim
upon which relief can be granted under ERISA § 510, the Court
need not reach the other grounds for dismissal suggested by
Defendant. The Court notes, however, that its decision to
dismiss this claim against Raytheon is in no way intended to
comment upon the viability of other claims Plaintiffs have
brought against Defendant Honeywell in relation to the retiree
health plan. In fact, much of Plaintiffs' briefing on this
matter appears to allege wrongs committed by Honeywell, rather
than Raytheon, in connection with alleged promises about
continued eligibility for the AlliedSignal plan. Presumably,
those issues will be addressed by the parties in future briefing
in this case.

12

## IV. **PLAINTIFF'S MOTION FOR CLASS CERTIFICATION ON COUNT VIII**

Because this Court has determined that Count VIII should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6), Plaintiff's motion for class certification of that claim will be denied as moot.

## V. **CONCLUSION**

For the foregoing reasons, Plaintiffs' motion for attorneys' fees in WMN-00-562 and WMN-00-2749 will be granted; Raytheon's Motion to Dismiss Count VIII of the Third Amended Complaint in WMN-00-562 will be granted; and Plaintiffs' Motion for Class Certification of Count VIII in WMN-00-562 will be denied as moot. A separate order consistent with this memorandum will issue.

William M. Nickerson
United States Judge

Dated: April 26th, 2002

13